AMERICAN SURETY CO. OF NEW YORK v. CROW et al.

(Supreme Court, Appellate Division, First Department.    May 7, 1897.)

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
    A new trial was properly granted for newly-discovered evidence where plaintiff in an action on an indemnity bond given by the answering defendant and two others, whose whereabouts were unknown until after the trial, testified that he had no other security than the bond sued on, and after the trial the answering defendant met one of his co-defendants, who told him that the indebtedness secured by the bond had also been secured by the debtor's real estate, the proceeds of which were afterwards applied by plaintiff to another claim against the debtor, and such statement was the first intimation the answering defendant had of that fact.

Appeal from special term, New York county.

Action by the American Surety Company of New York against Moses R. Crow and others on a contract of indemnity.    From an order granting the motion of defendant Moses R. Crow for a new trial on the ground of newly-discovered evidence, plaintiff appeals.    Affirmed.

Argued before WILLIAMS, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

John J. Crawford, for appellant.
Franklin Bien, for respondents.

INGRAHAM, J.    The court below has granted a new trial on the ground of newly-discovered evidence, and by this appeal the plaintiff asks us to reverse that order, mainly upon the ground that the newly-discovered evidence, being the testimony of one Hazard, so far as it would be admissible upon the trial, could not possibly change the result. The facts in this case are somewhat peculiar, and it is quite evident that there was not, upon the trial, that full or frank disclosure by the officers of the plaintiff, when examined as to the transaction between Hazard, Thurber, and the plaintiff, of such facts as are now reve..ed. It seems that the plaintiff had given a bond for the benefit of Hazard, and that this defendant Crow, with one Thurber, had signed an agreement to indemnify the plaintiff.    The plaintiff was subsequently called upon to pay such bond, and then brought this action against Hazard, Thurber, and the defendant Crow, this respondent, under the agreement of indemnity, to recover the sum that it had

paid.    In the meantime Thurber and Hazard had left the state, their whereabouts being unknown, and Crow only was served with process.    Against Crow's protest and strenuous objection, the action was brought on for trial as against him alone, and judgment was obtained, which this order appealed from sets aside.    On that trial the president of the plaintiff was interrogated as to other transactions between Thurber, Hazard, and himself; but he succeeded, by his answers, in eluding the question, so that the facts as to such other transactions were not disclosed upon the trial.    There was but one bond by which Thurber and Crow had agreed to indemnify the plaintiff for any liability of Hazard, although it now appears that there were other obligations of Hazard held by the plaintiff. It also appears that, subsequent to the execution of this bond by the plaintiff, Hazard, being the owner of certain real estate in New York, made an agreement with Thurber by which the title to such real estate should be acquired by Thurber, and the equity therein used to satisfy this claim of the plaintiff upon this obligation of Hazard's, for which Crow and Thurber were sureties; and Hazard alleges that, in pursuance of that agreement, Thurber made an arrangement with the plaintiff by which the plaintiff acquired the title to the property that belonged to Hazard, upon the understanding that any profit accruing to the company from that property should be applied to the payment of this indebtedness of Hazard which had been secured by Crow and Thurber, and that subsequently upwards of $11,000 was received by the plaintiff from such property. Hazard's affidavit upon which this motion was made does not state that he had any personal knowledge of the arrangement that was made between Thurber and the plaintiff.    He does say that Thurber told him of such arrangement, and that the president of the plaintiff subsequently admitted to him (Hazard) that such arrangement had been made with Thurber.    Thurber has left this state, and his present whereabouts, so far as appears, is unknown.    No affidavit of his is produced, and it does not appear that, if a new trial is granted, his testimony would be available.    It is strenuously insisted by counsel for the plaintiff that none of this testimony of Hazard's would be admitted in evidence upon a new trial, and I am inclined to think that the most material part of it would be incompetent; and, if the plaintiff had resisted this motion solely upon the incompetency of the proposed testimony of Hazard, there would be serious doubt as to whether the defendants had brought themselves within the rule which requires that the newly-discovered evidence should be of such a character that it would be admissible on the new trial, and would change the result.    The plaintiff, however, in answer to this affidavit of Hazard, for the first time discloses the fact that there was a contract between Thurber and the company, under which the company obtained title to certain property belonging to the defendant Hazard, referred to in Hazard's affidavit, and that by said contract it was provided that, should Thurber find a purchaser within 90 days from the date of the contract, then any profits that should accrue from the purchase and sale of such property should be applied to the payment of the indebtedness of Hazard to

the American Surety Company, the plaintiff, and that by said con·
tract it was expressly stated that the said profits might be applied
to any indebtedness due from Hazard to the plaintiff. The affidavit
further states that this agreement with Thurber was in writing, but
is now lost; and the terms of the agreement are proved by the affida-
vit of the attorney for the plaintiff, and by the president of the plain-
tiff. It is thus admitted that the plaintiff has received upwards
of $7,000, realized from the property of Hazard, which it has ap-
plied to an indebtedness of Hazard which was unsecured; holding
these sureties, Thurber and Crow, to the full amount of the liability
of Hazard which they had guarantied. Neither Thurber nor Crow
were responsible for any liability of Hazard to the plaintiff, except
this one claim in controversy. Thurber and Crow had guarantied
that claim. The contract, as to the disposition of the proceeds of
this property of Hazard's, was made between Thurber and the plain-
tiff; and there is at least a very strong probability that, when the
contract was made by which the plaintiff got the title to this prop-
erty, Thurber would have insisted that the proceeds would be ap-
plied to the payment of a liability upon which he was liable, rather
than to the payment of one upon which he was not so liable; and
the loss of the agreement—one evidently of considerable impor-
tance, under which the plaintiff had received, as it admits, upwards
of $7,000—is somewhat peculiar. Now, the president of the com-
pany, in his affidavit, swears that he was familiar with the terms of
the contract; yet on the trial of the action he was called as a wit-
ness, and counsel for the defendant there endeavored to ascertain
from him, and from other employés of the company, who were also
called as witnesses, the accounts of the company showing the re-
ceipt of money from Hazard, Thurber, or Crow. A consideration
of the testimony and of the proceedings before the court makes it
quite apparent that the president of the company, while now having
full knowledge of the agreement between himself and Thurber, at
that time did not disclose any information as to such agreement;
and, to say the least, the answers of the president of the company to
the questions put him were misleading. He was asked:

"Q. Was there any other, or was there any security of any sort available in
the hands of your company for the payment of these judgments that have been
referred to here? A. Nothing but our claim upon Mr. Thurber, and the se-
curity he has given for his portion,—his liability as indemnitor with Mr.
Hazard for Schickle, Harrison & Howard Company."

While it is not entirely clear that the judgments referred to were
the judgments that the company held against Hazard, at the same
time the question asked about "judgments" in the plural, and the
Schickle-Howard judgment, upon which this liability against Crow
arose, was but one judgment. It is quite clear that there is evi-
dence, and quite material evidence, that can be given by the officers
of this company upon a new trial, which at the time of the former
trial was unknown to the defendant Crow; and such evidence, in
connection with the testimony of Hazard that would be admissible,
will quite likely present a question for the jury as to just what the
agreement between Thurber and the company was as to the disposi-

tion of the profits arising from the sale of this real estate which had belonged to Hazard, and which had become vested in the plaintiff. Whether such profits were to be applied to any obligation of Hazard's, or whether they were to be applied to the discharge of the obligation upon which Thurber and this defendant were sureties, is now the only question at issue between the parties, and I think that the facts now before the court require that there should be a new trial.

The order appealed from is therefore affirmed, with $10 costs and disbursements. All concur.